1  PAUL J. DOMBECK, ESQ.
   Arizona State Bar No. 022418
2  THE LAW OFFICE OF PAUL J. DOMBECK, PLLC
   18444 N. 25th Ave., Ste 420
3  P.O. Box 37315
   Phoenix, AZ 85069
4  (602) 648-2035

5  Attorney for Plaintiff

6

## IN THE UNITED STATES DISTRICT COURT

7

## DISTRICT OF ARIZONA

8

9  Barbara Albert                          )
                                           )
10            Plaintiff                     )      No.
                                           )
11                                          )
                                           )
12            v.                            )
                                           )
13 Aetna Life Insurance Company, a foreign )      **COMPLAINT**
   corporation; Marriott International, Inc., a )
14 foreign corporation; Short Term Disability )
   Plan and LTD Plan, ERISA-governed       )
15 employee benefit plans;                  )
                                           )
16                                          )      _____
            Defendants.                     )
17                                          )
   _____     )
18

19        Comes now the Plaintiff, Barbara Albert, and by her attorney, PAUL J.

20 DOMBECK, and complaining against the defendants, states:

21                        **JURISDICTION AND VENUE**

22                                    I.

23        Jurisdiction of the court is based upon the Employee Retirement Income

24 Security Act of 1974 (ERISA); and in particular, 29 U.S.C.§§1132(e)(1) and 1132(f).

25 Those provisions give the district courts jurisdiction to hear civil actions brought to

26 recover benefits due under the terms of employee welfare benefit plans which, in this

27 case, consists of group short term and long term disability benefit plans to employees

28

of Marriott International, Inc. ("Marriott") set forth as *Short Term Disability Plan* and *LTD Plan* ("Plans" or "Plan(s)" or "Plan") administered and/or adjudicated by Plan(s) Fiduciary, Aetna Life Insurance Company ("Aetna"), provided by Marriott to plaintiff Barbara Albert, one of its employees.  In addition, this action may be brought before this Court pursuant to 28 U.S.C. §1331, which gives the District Court jurisdiction over actions that arise under the laws of the United States.

II.

The ERISA statute provides, at 29 U.S.C.§1133, a mechanism for administrative or internal appeal of benefit denials.  Those avenues of appeal have been exhausted.

III.

Venue is proper in the Phoenix District of Arizona.  29 U.S.C.§§1132(e)(2), 28 U.S.C. §1391, ERISA § 502(e), because the "breach" of the subject disability benefit Plans occurred in Maricopa County, Arizona, and because defendants may be found in Maricopa County Arizona.


**NATURE OF ACTION**

IV.

This is a claim seeking an award to Plaintiff of disability income benefits pursuant to the aforereferenced subject Plans, said Plans designated in Plan Documents as Group Policy Number (GP) 0698443 by Aetna, providing group Short Term Disability (STD) and Long Term Disability ("LTD") benefits to employees of Marriott USA, Inc ("Employer Marriott USA" or "Marriott"); said Plans are provided by Aetna and administered by Aetna under group control numbers and/or policy numbers not limited to Plan Number 504, GP-0698443 and Claim Number 3168771. This action, seeking recovery of benefits, is brought pursuant to §502(a)(1)(B) of ERISA 29 U.S.C. §1132(a)(1)(B).

## THE PARTIES AND THE DISABILITY PLANS

V.

That the Plaintiff is a resident of the County of Maricopa, State of Arizona, and has been at all times hereinafter stated.

VI.

That the Plans, as described in the Plan(s) documents, are, upon information and belief, welfare benefit plans providing respectively Group Short Term Disability and Group Long Term Disability for employees of Marriott.

VII.

That Employer Marriott is a Plan(s) fiduciary per 402(a) of ERISA, and upon information and belief, is a Washington D.C. corporation licensed to and doing business in Arizona, and further that Defendant Aetna, is a Connecticut company licensed to and doing business in Arizona.

VIII.

That Marriott, is the LTD Plan(s) administrator, and maintains health care coverages that are funded through Plan Number 504, Group Control Number GP-0698443 and/or Claim Number 3168771, issued by Aetna, and that claims upon said coverages are in actuality functionally administered and/or adjudicated by Aetna, and that Marriott was at all times relevant the employer of Plaintiff Barbara Albert.

IX.

That as claims adjudicator, defendant Aetna reviews disability claims for defendant Marriott for the purpose of approving, adjusting, denying or issuing benefits, based upon information that Aetna and Marriott generate.

X.

That the Plaintiff, as an employee of Marriott was eligible for certain

employee benefits, including disability plans and policies, as per the terms and conditions of the written Plans, as outlined on Summary Plan Description brochures and/or Group Benefit Plan documents offered to, disseminated amongst and granted to employees of Marriott, including but not limited to the benefits described as a Group Policy contract between Aetna as the Company and Marriott, as a subscriber to the Plan Number 504, Group Control Number GP-0698443 and/or Claim Number 3168771. That Barbara Albert elected and/or was provided benefit coverage paying 60% of monthly gross salary, and paid all premiums therefor as required.

XI.

At all times relevant hereto, the subject Plans constituted "employee welfare benefit plan(s)" as defined by 29 U.S.C. §1002(1); and incident to her employment, Barbara Albert received coverage under the Plans as a "participant" as defined by 29 U.S.C. §1002(7).  This claim relates to benefits under the foregoing Plans.

XII.

On or about September of 2004, Mrs. Albert began working for Marriott Vacation Club International, in Palm Desert California as a Timeshare Sales Executive. According to a job position description provided by Marriott, that occupation requires functioning *at the highest level of mental alertness and mental poise required for high level communication including presentations with potential buyers"*. Under the STD and LTD Plans, Mrs. Albert is entitled to a monthly disability benefit if she is essentially unable to perform the material duties of her "regular occupation" as a Timeshare Sales Executive and/or any other occupation.

**STATEMENT OF FACTS**

XIII.

At all appropriate times, Barbara Albert was a full-time employee of Marriott, USA, and she was actively employed at Marriott until on our about March 26, 2010 when she ceased working due to fibromyalgia, chronic fatigue, Raynaud's syndrome, a spinal condition, irritable bowel syndrome and resulting depression, anxiety and panic attacks. From March 27, 2010 until the present Barbara Albert has not engaged in any substantial gainful activity.

XIV.

On or around March 27, 2010, and while still maintaining status as a Marriott employee Plaintiff Barbara Albert made a timely application under the subject Short Term Disability (STD) Plan, under claim number(s) not limited to claim number 3168771, stating that on or about March 27, 2010, she met the Plan(s) definitions of disability on account of medical conditions which rendered her unable in pertinent part to *"perform the material duties of your own occupation solely because of an illness, injury or disabling pregnancy-related condition".*

XV.

Said medical conditions were specifically, severe fatigue, fibromyalgia, a spinal condition, and severe anxiety/depression and panic attacks that resulted from and/or was exacerbated by those physical conditions, and supported the plaintiff's claims for LTD benefits with medical records and reports and other evidence certifying her disability

XVI.

Based upon this application and supporting evidence Aetna initially awarded the plaintiff STD benefits from March 28, 2010, and paid said benefits through October 15, 2010, the maximum STD benefit payment duration limitation,

contemporaneous with which the plaintiff also completed a timely application for Long Term Disability benefits and received LTD benefits from the defendant until September 25, 2012.

XVII.

By October 10, 2012 Aetna informed the plaintiff that pursuant to an alleged further review of Plaintiff's medical evidence, that the plaintiff's diagnosed impairments and treatments supposedly no longer met the requisite definition(s) of disability after the dates of September 25, 2012 (for the LTD claim), and denied the plaintiff's benefits beyond that date.  Meanwhile, on or around May 4, 2012, the plaintiff was awarded Social Security Disability benefits retroactive to August 1, 2010.

XVIII.

On or about April 3, 2013, Barbara Albert submitted to Defendant Aetna an administrative appeal of the denial of her LTD benefits in accordance with 29 U.S.C. § 1133.  In support of this appeal, Barbara Albert submitted additional medical evidence from treating and examining physicians and vocational and other sources demonstrating substantially that her condition had not improved, and thereby met and continued to meet the Plan(s)' requisite disability definitions, and also advised Aetna specifically that Aetna improperly focused its denial upon various mental and psychological signs and symptoms and failed to properly consider Ms. Albert's fibromyalgia, chronic fatigue and spinal impairments, including evidence of worsening pain with activity, and pain radiating to her arm and an anticipated work loss of at least four full days each month, and Plaintiff also referenced December 2012 imaging studies showing moderate to severe narrowing at the L4-5 level and also a T2 radial tear and osteoarthritis consistent with Raynaud's syndrome in her hands; asking that Aetna reverse the denial and reinstate Ms. Albert's benefits in light of the evidence.

XIX.

In response to this appeal, Aetna reinstated LTD benefits to the plaintiff

on or about May 28, 2013.

XX.

Then in the first quarter of 2014, Aetna initiated yet another claim review, and in conjunction with this review required that Mrs. Albert attend a March 18, 2014 medical examination by a consultant hired by Aetna, Arlen Rollins, D.O.

XXI.

Prior to the March 18, 2014 examination Plaintiff through counsel wrote Aetna a number of letters requesting some verification controls upon the examination process, specifically that Ms. Albert be permitted to bring her witness into the examination room with her and also video-record or at least audio-record the proceedings, requests which Aetna wholly refused, and moreover on March 18, 2014 consultant Rollins actually refused to allow the plaintiff's husband into the examination room with her.

XXII.

Following the March 18, 2014 consultative examination, on or about May 12, 2014, Aetna, based upon the report prepared by consultant Rollins, denied the plaintiff's LTD claim for ongoing benefits and also stating that "*based upon the totality of the available information within your claim file, we have determined that you are not precluded from performing the material duties of your own occupation*".

XXIII.

In response to Aetna's denial of the LTD claim and in response to the assertions and conclusions of Aetna's medical consultant Rollins, the plaintiff submitted to Defendant Aetna another appeal in accordance with 29 U.S.C. § 1133; specifically on December 5, 2014 the plaintiff submitted a written appeal to Aetna noting in pertinent part:

A.  That it was apparent that Aetna's and consultant Rollins' refusal to allow any non-

defense witnesses or any recordings of what Rollins alleges transpired in the examination had resulted in a flawed process and flawed conclusions and an unfair denial of the plaintiff's claim for ongoing benefits.

B) That shortly after the March 18, 2014 examination by consultant Rollins Ms. Albert conveyed to Aetna representatives her written impressions of the examination process and also of consultant Rollins, advising in pertinent part that consultant-Rollins was dismissive with her and also would not permit Ms. Albert's husband to carry Ms. Albert's bag into the examination room with her, but that Rollins cited Ms. Albert's ability to carry the bag as evidence against her.

C) That the crux of Rollins' examination report was flawed in that Rollins represented that Ms. Albert's symptoms and presentation were supposedly exaggerated and her immune and spinal symptoms were supposedly non-severe and/or should not otherwise preclude a return to work;  Specifically that Rollins' conclusion that Ms. Albert's conditions were subjective in nature and that degenerative spinal changes were "normal" for her age and not severe was flawed.

D) that after Rollins essentially represented Ms. Albert's spinal symptoms as 'not severe', at least two other spinal specialists who examined Ms. Albert and concluded that Ms. Albert's spinal condition was so severe (as clinically indicated by the imaging studies) that if a surgical correction was not done soon Ms. Albert would likely end up with greater permanent damage; and further, that based upon comparative imaging studies, Ms. Albert's spine has been this way since at least 2012.

E) That Ms. Albert's surgical consult records from August 4, 2014 indicated Ms. Albert had a lot of back pain and yet was hoping to rejoin the work-force if the pain could one day improve, and that a treating physician (Estelle Farrell, D.O.) over the last couple of years has tried conservative approaches which did not work, including Physical Therapy.

F) That the new 2014 spinal MRI showed a moderate to severe problem at the L4-5

level, and that the 2012 comparative study also showed the same problem; and that the surgeon had also concluded that Ms. Albert's pain symptoms were clinically indicated by the imaging and other findings.

G) that Ms. Albert was very afraid of the risks of the invasive surgical procedure recommended by the three specialists she consulted, yet because she did not want to exist on narcotics and was actually trying to fix her condition and also was worried about the consequence of leaving the worsening condition uncorrected, she planned to undergo the recommended surgical procedure;

H) That on or about October 28, 2014 Ms. Albert underwent the Lumbar Disectomy and Fusion procedure.

I) That the fact that Ms. Albert needed and underwent spinal surgery was not consistent with the 'non-severe' spinal condition and the 'exaggerating' profile that consultant Rollins attempted to portray.

J) that Aetna hired a detective firm to follow Ms. Albert, presumably to seek evidence that she could work, yet the surveillance footage did not show Ms. Albert doing anything unusual for her claimed condition, that said footage to the contrary depicted Ms. Albert bending a few times with some difficulty and with her back slightly hunched over and demonstrated she had a diminished ability to grasp items.

K) That said surveillance footage also recorded a sedentary visit to a nail salon and also Ms. Albert lifting an item that appeared only five pounds or less, and also showed a grocery store employee taking Ms. Albert's groceries and placing them in the car and Ms. Albert refraining from attempting this task herself; and that none of these activities observed by Aetna's surveillance investigator were inconsistent with Ms. Albert's symptoms and limitations and certainly did not suggest Ms. Albert had any capacity for full-time work.

L) That additionally, Ms. Albert's treating physician Farrell had clarified in a written opinion on or about April of 2014 that none of the activities depicted in the

surveillance footage were inconsistent with Ms. Albert's limitations or remaining capacity.

M) That Aetna's reliance for denial upon surveillance report conclusions about the plaintiff's interaction with her grandchildren and Plaintiff's supposed membership in a group were misplaced as the surveillance report of these activities was inconclusive if not misleading regarding the scope of these activities and their bearing upon the plaintiff's ability to sustain full-time competitive work as contemplated by the subject Plan's disability definition

N) That Aetna's reliance for denial upon surveillance report conclusions were also problematic because Aetna's surveillance investigator, upon information and belief, appeared to have utilized misleading and/or deceptive tactics to elicit responses from people in Ms. Albert's neighborhood; specifically upon information and belief said representatives appear to have represented themselves as representatives or affiliates of Ms. Albert's former employer Marriot and/or other potential employers, and in that capacity misleadingly implied to witnesses that Ms. Albert was seeking employment, and thereby misleadingly imparted to potential witnesses that Ms. Albert was capable of the activity which comprises the issue at dispute in the claim they were investigating; that thereby said investigators appear to have improperly influenced potential witnesses.

O) That despite investigative tactics and results that were unreliable if not misleading the surveillance footage and also the November 2013 background check report authored by Aetna's investigator (Claims Bureau, USA) nevertheless did not indicate evidence of any activity inconsistent with Ms. Albert's claimed impairments or which was otherwise suggestive of a competitive work-capacity, and in sum actually supported Ms. Albert's account of her restrictions and residual lifestyle.

P) That based upon available patient-reviews consultant Rollins is generally not well-regarded by patients and that Ms. Albert indicated Dr. Rollins was dismissive with her

and somewhat rough in his physical examination of her.

Q) That in attempting to dismiss and/or minimize Ms. Albert's treating physicians' conclusions, consultant Rollins' conclusions were so sweeping that Rollins also managed to contradict and dismiss Aetna's own prior medical consultant's opinion that the case evidence demonstrated Ms. Albert cannot sustain any level of competitive work.

R) That consultant Rollins inaccurately concluded based upon erroneous information contained in Aetna's November 2013 background check report that the claimant and her husband have a home business, failing specifically to recognize and/or understand that said business belonged to and was run by Barbara's husband Mr. Albert.

S) That not all available records were addressed in consult Rollins' report. Among those Rollins did not address were diagnostic and treatment records for chronic cough; a functional capacity report by treating physician, doctor Farrell, that contained descriptions of Ms. Albert's impairments and physical limitations; a Spirometry test showing Ms. Albert coughed throughout the spirometry exam procedure and had dyspnea after the test; a Thorax CT scan showing a lesion on the lung and bilateral pleural effusion indicating why Ms. Albert had the persistent cough.

T) That consultant Rollins' report listed certain records and purported to give a summary of those records, yet some of these summaries distorted by omission the purpose of the 'summarized' consult;

   1) A June 5, 2013 record for a lung-consult that consultant Rollins only considered as evidence that Ms. Albert was not complaining about her spine.

   2) Consultant Rollins referenced 'normal' findings in an October 15, 2013 John L.  Sherman M.D consult record, but failed to mention that doctor Sherman also observed Ms. Albert's persistent coughing; that during his own examination of Ms. Albert,  Rollins observed her coughing but declared Ms.

Albert was only doing so for psychological reasons, despite the pulmonary imaging study and spirometry test indicating a problem with the lungs.

3) Consultant Rollins cited a September 18, 2013 endocrinology consult as an example of a 'normal' spinal finding but neglected to also mention that the purpose of that consult was to address Ms. Albert's fatigue (a symptom for which there was an objective basis; namely lab results contemporaneous with that same exam, indicating hypothyroid condition caused by the removal of Ms. Albert's thyroid gland just one month earlier).

4) A statement in Ms. Albert's July 26 2013 consult with Samuel Bailey M.D. was presented by consultant Rollins in isolation of pertinent additional facts: specifically Rollins noted this consult record said Ms. Albert was complaining of a 'dry, burning sensation and difficulty swallowing', but Rollins only declared "he [Bailey] explained to her [Albert] that the pain she was having seems to be quite out of proportion to her examination findings", suggesting that Ms. Albert was exaggerating her symptoms, yet neglecting to mention that it was apparent doctor Bailey only meant by those words that he was concerned Ms. Albert's complaints may suggest a more serious problem; and that Bailey and/or other doctors in fact consequently ordered testing and surgery that actually confirmed thyroid cancer, and that Ms. Albert then had to have surgery to remove the cancer.

5) Consultant Rollins cited the May 21, 2013 report of Aetna 'psychiatric' consultant Roy Sanders as evidence that Ms. Albert was supposedly not physically impaired without mentioning or otherwise considering that  Doctor Sanders also noted in his report that he was hired to review psychiatric issues only and that his report clearly showed that he deferred the physical impairments to specialized physicians.

6) Consultant Rollins was critical that the social security federal hearing office

which found Ms. Albert disabled gave little credence to a May 2012 report of a "single-visit" social security state agency doctor who concluded Ms. Albert could work, but inexplicably failed to credit the state agency's rationale that the reports and conclusions of Ms. Albert's treating physicians (Wallace M.D. and Leitner M.D.) were more credibly consistent with Ms. Albert's complaints.

U) That in reaching his opinions and conclusions, consultant Rollins also improperly relied in pertinent part upon broad categories of 'daily living activities' as supposed evidence Ms. Albert should be able to sustain full-time work:

1) Consultant Rollins claimed Ms. Albert 'admitted to using the computer for four hours a day, two in the a.m. and two in the p.m', but failed to explore any context of limitations and restriction Ms. Albert had with this activity and did not allow Ms. Albert time or opportunity during his examination of Ms. Albert to explain those restrictions and limitations

2) Consultant Rollins implied that Aetna surveillance footage showing Ms. Albert walking suggested Ms. Albert was less credible but did not acknowledge or otherwise consider that Ms. Albert never said she could not walk nor that the footage did not capture the 'down-time' and the 'bad days', nor how long it could take Ms. Albert to recover from walking or shopping, nor that she appeared to be in pain in some of the footage.

3) Consult Rollins appeared critical Ms. Albert watched television for some three hours per day, yet failed to address or explore Ms. Albert's postural difficulties and limitations with this activity or how viewing a television suggests the capacity to sustain full-time competitive work.

4) Consultant Rollins improperly concluded Ms. Albert was not credible and could work full-time because he saw her carry a 9.5-lbs bag into the examination room despite Aetna's own surveillance conducted on the day of the examination showing Ms. Albert's husband carrying that bag up until

Rollins' office staff told Ms. Albert that her husband would not be allowed to carry the bag into the examination room.

XXIV.

On or about October 28, 2014 Ms. Albert underwent the spinal discectomy and fusion surgery that Consultant Rollins failed to recognize or acknowledge she needed, and for the next three months until late January 2015 Ms. Albert was in various phases of recovery ranging from bed rest to physical therapy.

XXV.

On or about November 7, 2014, Ms. Albert through counsel gave notice of appeal of Aetna's May 12, 2014 denial, and over the next several weeks submitted to Aetna various medical, testimonial and other evidence and argument, including the pre-surgical consults, and as they became available, the records of Ms. Albert's recent surgery and ongoing post-surgical recovery records as well as records reflecting treatment of thyroid cancer, and cardiac consults for shortness of breath and dizziness.

XXVI.

By late January of 2015 Ms. Albert's spinal condition had improved as a result of the spinal surgery, and Ms. Albert through counsel advised Aetna of this, but also advised that Ms. Albert could not attempt to return to work until post-operative recovery was complete.

XXVII.

Despite Ms. Albert's submission of these arguments and evidence, on or about March 11, 2015, Aetna issued a "final" denial of Ms. Albert's claim alleging in pertinent part that Ms. Albert's treating doctor (Farrell) supposedly had made a remark in August of 2014 that Aetna claimed suggested Ms. Albert could work; and also that up until the time Ms. Albert actually underwent surgery Aetna believed Ms.

Albert should have been able to sustain full-time competitive work.

XXVIII.

Aetna misconstrued and distorted the observations of treating physician Farrell in order to justify its denial; specifically and in pertinent part, Aetna misquoted a portion of an August 14, 2014 doctor Farrell consult record as supposedly saying *"...ongoing medical issues reflected the ability to tolerate working,"* when the written record confirms doctor Farrell actually said *"...[Ms. Albert] has ongoing medical issues that could affect her ability to have tolerance to working*; thereby Aetna distorted doctor Farrell's words, falsely suggesting the doctor's expression of Ms. Albert's *inability* to sustain work as language suggesting an ability to work.

XXIX.

After receiving Ms. Albert's November 7, 2014 appeal Aetna hired two more consultants to review Ms. Albert's medical files, the first who claimed that the probative value of Ms. Albert's treatment records was supposedly diminished because providers signature dates supposedly differed from treatment dates, and the second who declared Ms. Albert disabled only for a few weeks right before her October 2014 spinal surgery and during her recovery time, and also claimed the surveillance footage of Ms. Albert walking with difficulty suggested Ms. Albert could somehow sustain work.

XXX.

Around this same time Aetna retained the consultants referenced in paragraph XXIX, Aetna also retained or employed a vocational consultant who was given, among other documents, the report of the second consultant referenced in paragraph XXIX (a Doctor Rhea), and based in pertinent part upon that report Aetna's vocational consultant concluded Ms. Albert had no transferable skills or functional abilities.

XXXI.

Aetna's final March 11, 2015 denial neglected to address the conclusions of Aetna's own vocational consultant yet declared that Ms. Albert's records failed to support disability and that Ms. Albert was able to perform the duties of her own occupation as a Sales Executive.

XXXII.

Since March 27, 2010, Barbara Albert has been "totally disabled" as such term is defined in the subject Plans, inclusive of any waiting periods and has remained under continuous medical care by physicians.

XXXIII.

As a result of the issuance of the final March 11, 2015 denial, all administrative remedies have been exhausted, and this matter is ripe for judicial review.

XXXIV.

That the plaintiff was only able to potentially sustain competitive full time employment by late March of 2015 following the conclusion of her post-operative therapy treatments, and until at least the end of March 2015 she met all pertinent Plan(s)' definitions of total disablement.

XXXV.

That the plaintiff requests the Court declare the rights and legal obligations of the parties and declare that the Long Term Disability Plan constitutes a binding and enforceable agreement that continued at least through January of 2015. That the plaintiff prays for full relief for accumulated and accumulating monthly benefits and interest through the conclusion of litigation.

XXXVI.

That this litigation is timely brought having followed within appropriate

and/or applicable time limitations the defendants' final denial and resultant exhaustion of administrative remedies, and is appropriate for a Federal Court deciding Short Term and Long Term Disability issues per Section 502(a)(1)(B) of ERISA.

**Count One: Claim for Benefits Under ERISA**

XXXVII.

Defendant Aetna abused its discretion because its decisions denying the plaintiff's disability benefits were arbitrary and capricious and have no rational support in the evidence, and were caused or influenced by Aetna's consultants' financial conflicts of interest and also by Aetna's and/or the Plan(s)' own inherent financial conflict(s) of interest.  These conflicts of interest have undermined the full and fair review required by ERISA, 29 U.S.C. 1133(2) and 29 C.F.R. §2560.503-1(g)(1) and (h)(2).

XXXVIII.

Under the de novo standard or review, Aetna's decisions were erroneous, contrary to the Plan(s) terms, and contrary to the medical and vocational evidence.

XXXIX.

Upon information and belief, Aetna, the Plans, and the purportedly "independent" consultant Rollins and Aetna's other consultants who evaluated the plaintiff's subject claim also suffer from financial conflicts of interest and bias which have also  precluded a full and fair review of the plaintiff's claim.

XL.

As a rationale for denying benefits, Defendant Aetna has improperly favored said hired-consultants' conclusions over the conclusions of treating physicians; specifically that in reaching their conclusions, defendant Aetna's

physician consultants failed to consider all of the plaintiff's signs, symptoms, impairments and limitations.

XLI.

That the defendants' consultants' opinions are so conclusory, unsubstantiated and against the weight of the evidence as to indicate that said consultants were improperly influenced by Aetna to support a benefits denial and/or that said consultants had a financial interest in supporting the claim denial in order to ensure repeat business, which infected the claim process and constitutes a procedural irregularity under ERISA that denied the plaintiff the full and fair review to which she is entitled.

XLII.

The plaintiff is entitled to discovery regarding the effects of the procedural irregularities that occurred during the claims handling process and also regarding the effects of Aetna's consultants and Aetna's and/or the subject Plan(s)' financial conflicts of interest upon the claim denials.

XLIII.

The plaintiff has been injured and has suffered damages in the form of lost LTD benefits as a result of the defendants' wrongful decisions to deny the plaintiff disability benefits.

XLIV.

Pursuant to ERISA, 29 U.S.C. § 1132, the plaintiff is entitled to recover unpaid disability benefits, prejudgment interest, reasonable attorney's fees, and costs from defendants and/or is entitled to an order enforcing her right to disability benefits under the LTD plan.

XLV.

As a direct and proximate result thereof, based upon the evidence

submitted by Plaintiff to Defendants establishing that Plaintiff has met the STD and LTD Plan(s)' requisite disability definitions continuously since March 27, 2010, Plaintiff is entitled to her monthly disability insurance payments retroactive to the subject denial date of May 12, 2014 until the end of March 2015 when the plaintiff's spinal condition improved and her post-operative therapy treatment concluded.

XLVI.

The plaintiff has further been injured and suffered damages by losing other benefits to which she may have been entitled under her employer's ERISA-governed benefits plans.

XLVII.

Upon information and belief that Group Control Number 3168771 also contains a waiver of premium benefit on certain life insurance benefits and policies to which the Plaintiff is entitled if disabled as alleged in the causes of action heretofore, and that in connection with the denial of the subject LTD benefits, the plaintiff was notified that she no longer met eligibility requirements for said premium waiver and therefore has already lost or soon will lose the substantial ERISA benefit of said life insurance policies.

XLVIII.

That the Defendants, Aetna, the Plans and Employer Marriott, stand as fiduciaries to one another and to the plaintiff, and each defendant has the power to bind the other, as agent.

XLIX.

That the actions of Defendants are a breach of contractual and/or fiduciary duties inuring to the Plans pursuant to the requirements of 29 U.S.C. §502(a)(1)(B).

L.

That the defendants' actions are an unwarranted breach of the subject Long Term Disability Plan, representations by Plan(s)' documents, ERISA, and the contract(s) of insurance, and have caused and continue to cause the plaintiff great financial hardship.   That the plaintiff meets the subject and requisite disability definition(s) and provisions of her "own" and/or "any" occupation policy provisions of the subject LTD Plan(s), with special essential duties and hourly provisions.

LI.

That the plaintiff's damages are $155,435.36 calculated under the subject LTD Plan as 60% of $27,297.28 gross monthly salary from May 13, 2014 through March 31, 2015, minus $13,387.50 Social Security Disability benefit for the same time period of May 13, 2014 through March 31, 2015 (as derived from Ms. Albert's $1,575.00 monthly Social Security Disability benefit).


WHEREFORE, the Plaintiff prays judgment as follows:

A. For a judgment for benefits and an Order such benefits continue, per ERISA, including 29 U.S.C. § 1132(g)(2).

B. For $155,435.36 for LTD benefits from May 13, 2014 through March 31, 2015, through judgment and post-judgment as appropriate, and all monthly payments and accumulated interest due from day of judgment.

C. For declaratory judgment granting Plaintiff all rights and benefits under the written Policies/Plans, and to award the plaintiff a money judgment for all sums due and owing with interest from time of breach; and/or an order enforcing the plaintiff's right to benefits under the subject Plans;

D. For all other damages as may be just and proper under Arizona State law or developing ERISA and/or other Federal case and statutory law.

E. For attorney fees, pursuant to ERISA, see 29 USC § 1132(g)(1).

F. For appropriate relief under 29 USC § 502(a)(1)(B), to redress such violations, or to enforce any provision of this title or the terms of the Plans.

G. For reimbursement for any funds paid by Plaintiff or due the plaintiff for the continuation of life insurance policies as an employee benefit dependent upon STD//LTD-eligibility on behalf of the plaintiff and any dependents, and, in the eventuality of death during the pendency of this litigation, to full payment on all policies to the named beneficiaries.

H. For costs and disbursements of this action and interest on all sums owed until payment.


DATED this 5th day of June 2015

THE LAW OFFICE OF PAUL J. DOMBECK, PLLC


By  s/  Paul J. Dombeck

PAUL J. DOMBECK, ESQ.
18444 North 25th Avenue, Ste 420
P.O. box 37315
Phoenix, Arizona  85069-7315
Attorney for Plaintiff

CERTIFICATE OF SERVICE

I hereby certify that on this 5th day of June, 2015, I electronically transmitted the attached document to the Court Clerk's Office using the CM/ECF System for filing and transmittal of a Parties' Civil Coversheet, Summons and Complaint.


s/ Paul J. Dombeck
_____

Paul J. Dombeck